Filed 4/2/13  Marriage of Stupansky CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| In re the Marriage of VICTOR and SANDRA STUPANSKY. | |
| VICTOR STUPANSKY,<br><br>Appellant,<br><br>v.<br><br>SANDRA MONETTE,<br><br>Appellant. | C068246<br><br>(Super. Ct. No. SCCVFL081436) |

This appeal arises from the dissolution of marriage of Victor Stupansky (Victor) and Sandra Monette (Sandra).  Both parties challenge the trial court's judgment regarding the division of property.

In part I, we discuss Victor's appellate contentions.  He argues the trial court erred in finding that his Petaluma residence was transmuted from separate property to

1

community property, and in determining that Sandra was only required to reimburse the community $51,612.50 for the funds Sandra applied to her separate property duplex in Santa Rosa.

In part II, we discuss Sandra's contentions in her cross-appeal. She asserts the trial court erred in failing to order Victor to return all the money he withdrew from a community certificate of deposit and deposited into his separate account, and in excluding evidence concerning Victor's misappropriation of community funds.

As we will explain, given the limited appellate record in this judgment roll appeal, the parties did not meet their appellate burden to demonstrate reversible trial court error. Accordingly, we will affirm the judgment.

BACKGROUND

We limit our background recitation to the circumstances relevant to the contentions on appeal. Moreover, because the parties elected to proceed without a reporter's transcript, the relevant facts are taken from the trial court's findings and conclusions. (*Krueger v. Bank of America* (1983) 145 Cal.App.3d 204, 207.)

Prior to their marriage, Victor owned a residence in Petaluma and Sandra owned a duplex in Santa Rosa. They married on September 8, 1991, resided in the Petaluma residence and rented out both units of the Santa Rosa duplex.

Victor and Sandra drafted the Stupansky Family Trust in 1993 and transferred the Petaluma property into the trust. They withdrew the Petaluma property from the trust in 1994 and transferred it to themselves in joint tenancy. The parties then sold the property in 2002 for a profit of $610,000 and used the proceeds to purchase six unimproved lots in Siskiyou County. They combined two of the lots, built a family residence on them, and left the other four lots unimproved.

Victor and Sandra separated on October 2, 2008.

At trial, the parties disputed whether the Petaluma residence should be characterized as community or separate property, whether the community had a right to

2

reimbursement for expenditures on the Santa Rosa duplex, and whether money was misappropriated from bank accounts. According to the trial court, "both parties made numerous allegations of wrong-doing and concealment of community assets[;] however, neither provided much evidence to support these allegations and the evidence that was provided was often inadequate. The court was required to painstakingly sift through numerous documents and try to piece together patterns to determine whether such allegations were supported. Frequently the court found itself in the position of having to resort to speculation and conjecture. At these points the court was required to resort to family law presumptions to characterize property and rights of reimbursement."

Victor testified he had no intention of transmuting his Petaluma residence from separate to community property, and he had nothing to do with establishing the trust. But Sandra testified that Victor wanted to establish a family trust, worked with an attorney to draft the trust, and she had nothing to do with it. She maintained that she was not present when Victor signed the trust document or transfer deeds. She said her name was put on the title when the Petaluma property was withdrawn from the trust, and she had nothing to do with drafting the deed to withdraw the property from the trust. Sandra did not put her Santa Rosa duplex in the trust, despite Victor's insistence that she do so, because she did not know much about trusts.

Victor did not dispute that the parties retained an attorney to assist in the drafting and implementation of the trust documents, that Victor alone handled the withdrawal of the Petaluma property from the trust, or that the value of the Petaluma property on the date of the marriage was $317,500.

The trial court found that Victor's testimony was vague and that Sandra's testimony was more credible. It found no evidence of undue influence in the Petaluma property transaction. It found the property was transmuted from separate to community property, and that Victor was entitled to reimbursement from the community in the

3

amount of $317,500, which was the only evidence of the separate property value of the Petaluma residence before the transmutation.

With respect to Sandra's Santa Rosa duplex, the trial court found that she purchased it in 1988 and retained title as her separate property. She refinanced the property in 1993 and asked Victor to sign an interspousal transfer deed transferring any interest he might have in the property to her. Victor testified he was not coerced into signing the deed and did so because he believed the duplex was her separate property. The evidence demonstrated that the duplex was rented throughout the marriage, that the rental amount was sufficient to pay the property expenses through 2007, and that there were no significant repairs that exceeded its income between the date of the marriage and 2007. Accordingly, the trial court found the community had no interest in the Santa Rosa duplex and was not disadvantaged by the execution of the deed.

Victor nonetheless alleged there was a community interest in the Santa Rosa duplex because Sandra took funds from the community to support the duplex by paying down the encumbrance and funding maintenance and repairs. Sandra countered that the funds came from her separate property; that is, from a personal injury settlement she received prior to the marriage in 1988, and from an inheritance she received from her mother in 1998 and 1999. She used some of the personal injury settlement funds to purchase the duplex, and placed the remaining amount in a bank account. After she married, she continued to receive rental income from the property and deposited the funds in a community bank account with Bank of America. She used the deposited funds to pay the duplex expenses and, because the income exceeded the expenses, there was money left over which was used to support the community.

Sandra received an inheritance of $123,000 to $127,000 between 1997 and 1999. She deposited the money into a savings account, which the court indicated was a separate property account. She used some of the funds to successfully defend a partition action

4

brought by her daughter, who was a tenant in the Santa Rosa duplex, and other funds to pay down the mortgage and refinance the Santa Rosa duplex in 1999.

Victor submitted bank statements as evidence that the funds used to pay down the mortgage came from a community source. The trial court found that the evidence taken as a whole indicated otherwise, and did not refute Sandra's evidence that the money used for repairs and to pay down the mortgage came from a separate property source. The exceptions, however, were transfers of $11,612.50 and $41,000 from community bank accounts, which Sandra failed to trace to a separate property source. Accordingly, the trial court found that the Santa Rosa duplex was Sandra's separate property, but that she must reimburse the community in the amount of $52,612.50.

With respect to the parties' community bank accounts, Victor and Sandra both accused the other of bad faith in withdrawing and hiding large amounts of money. They testified that the sale proceeds from the Petaluma property were deposited into a "maximizer" account with Bank of America, and that the funds used to purchase the Siskiyou properties and to build the family residence were taken from this account. Thereafter, Sandra withdrew $169,656.86 from a community bank account and Victor withdrew $43,500.95. The trial court observed that each party had the right of management and control over community assets subject to acting as fiduciaries to the other partner, and there was no evidence or explanation regarding the disposition of the funds.

Victor also cashed a community property certificate of deposit in the amount of $151,699.67 and deposited the money in a bank account held solely in his name. At the time of trial, $110,000 was left in the account. The trial court found that the entire $110,000 was community property and subject to the jurisdiction of the court. Accordingly, it awarded each party $55,000.

5

STANDARD OF REVIEW

The trial court has broad discretion over the division of community property. (Fam. Code, § 2550; *In re Marriage of Brown* (1976) 15 Cal.3d 838, 848, fn. 10.)[1] We review the trial court's judgment dividing marital property for an abuse of discretion. (*In re Marriage of Dellaria & Blickman–Dellaria* (2009) 172 Cal.App.4th 196, 201.) We review matters of law de novo, but uphold the trial court's factual findings if supported by substantial evidence. (*Ibid.*)

In the present case, the parties opted not to provide a reporter's transcript and elected to proceed on a clerk's transcript. This is known as a judgment roll appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082–1083; *Krueger v. Bank of America, supra,* 145 Cal.App.3d at p. 207; Code Civ. Proc. § 670.) "In a judgment roll appeal based on a clerk's transcript, every presumption is in favor of the validity of the judgment and all facts consistent with its validity will be presumed to have existed. The sufficiency of the evidence is not open to review. The trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court, unless reversible error appears on the record." (*Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924 (*Bond*); see also Cal. Rules of Court, rule 8.163.)

"[T]he record before us consists properly of only the judgment, findings of fact and conclusions of law in support thereof, and the pleadings; we are not concerned with evidence taken in the trial court, either orally or through the admission of exhibits (whether or not said exhibits are incorporated into the clerk's transcript) . . . ." (*Millbrae Assn. for Residential Survival v. City of Millbrae* (1968) 262 Cal.App.2d 222, 226-227.) Appellants cannot enlarge the scope of appellate review by designating for inclusion in

---

[1] Undesignated statutory references are to the Family Code.

the clerk's transcript documents not properly a part of the judgment roll, such as the exhibits received in evidence.  (*Tibbets v. Robb* (1958) 158 Cal.App.2d 330, 337.)

Furthermore, a judgment or order of the trial court is presumed to be correct, and all intendments and presumptions are indulged to support it on matters as to which the record is silent.  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977-978.)  It is the appellant's burden to affirmatively demonstrate reversible error by:  (1) providing an adequate record that affirmatively demonstrates error; (2) supporting all appellate arguments with legal analysis and appropriate citations to the material facts in the record; and (3) showing exactly how the error caused a miscarriage of justice, else his or her contentions are deemed forfeited.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239-1240; *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337; *Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Appellants may not simply incorporate by reference arguments made in papers filed in the trial court rather than brief the arguments on appeal.  (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334.)  They must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made.  (Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4.)

These procedural rules are not mere technical requirements; they are essential to the appellate process.  Appellants must "present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised . . . of the exact question under consideration, instead of being compelled to extricate it from the mass."  (*Landa v. Steinberg* (1932) 126 Cal.App. 324, 325; accord, *Opdyk v. California Horse Racing Bd., supra,* 34 Cal.App.4th at p. 1830, fn. 4.)

7

With these rules in mind, we turn to the parties' appellate contentions.

DISCUSSION

I

Victor contends the trial court erred in determining that his residence in Petaluma was transmuted to community property. He argues there was no compliance with section 852, subdivision (a), which states: "A transmutation of real or personal property is not valid unless made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." He believes there was no transmutation because there was no express written language indicating the intent to transmute the property.

The requirements for a valid transmutation under section 852 can be divided into two basic components: (1) a writing that satisfies the statute of frauds, and (2) an expression of intent to transfer a property interest. (*Estate of Bibb* (2001) 87 Cal.App.4th 461, 468 (*Bibb*).) In *Bibb,* there was no dispute that the grant deed at issue was a writing satisfying the statute of frauds, and the appellate court held the use of the word "grant" in the grant deed was an expression of intent to transfer a property interest. (*Bibb, supra,* 87 Cal.App.4th at pp. 468-469.)

Here, the trial court found the residence was transmuted from Victor's separate property into community property when Victor transferred the property to a family trust, and then Victor and Sandra, as trustees of the trust, deeded the property to Victor and Sandra as joint tenants. Victor has not shown error and no error appears on the face of the record. Under these circumstances, the trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding on the appellate court. (*Bond, supra*, 50 Cal.App.4th at p. 924.)

Victor also argues the trial court erred in determining that Sandra was only required to reimburse the community for $51,612.50 that she used for her separate property duplex in Santa Rosa, instead of the $370,872 that Victor alleged was owed to

8

the community.  He claims the trial court's analysis "unfairly reject[ed] his community property evidence and goes out of its way to establish separate property status for the parties['] funds for purposes of [Sandra's] duplex."  In other words, Victor challenges the sufficiency of the evidence to support the judgment.

But we cannot review the sufficiency of the evidence if the record does not include all the evidence.  In this judgment roll appeal, the limited record does not include a reporter's transcript of the five-day trial and Victor did not object to the statement of decision or bring any asserted errors or omissions to the attention of the trial court. Without a complete record, we must imply findings to support the judgment and we must presume there is evidence to support the implied findings.  "If the party challenging the statement of decision fails to bring omissions or ambiguities in it to the trial court's attention, then, under Code of Civil Procedure section 634, the appellate court will infer the trial court made implied factual findings favorable to the prevailing party on all issues necessary to support the judgment, including the omitted or ambiguously resolved issues. [Citations.]  The appellate court then reviews the implied factual findings under the substantial evidence standard.  [Citations.]" (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59–60.)  " 'In a judgment roll appeal every presumption is in favor of the validity of the judgment and any condition of facts consistent with its validity will be presumed to have existed rather than one which will defeat it.  [Citation.]  The sufficiency of the evidence to support the findings is not open to review.  [Citation.]' (*Wheelright v. County of Marin* (1970) 2 Cal.3d 448, 454.)"  (*Estate of Kievernagel* (2008) 166 Cal.App.4th 1024, 1031; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 360, pp. 415-416.)

Because the appellant is confined to showing errors which are affirmatively demonstrated by the record, "showing any such error is extraordinarily hard to do, given that a challenge to the sufficiency of the evidence cannot be made." (*In re Marriage of*

9

*Hall* (2000) 81 Cal.App.4th 313, 316.)  Here, Victor has not shown error and no error appears on the face of the record.

II

In her cross-appeal, Sandra contends the trial court erred in failing to order Victor to return all the money he withdrew from the community certificate of deposit and deposited into his separate account.  She argues there is no substantial evidence to support the trial court's ruling that the community is only entitled to reimbursement for $110,000, which reflected the amount remaining in Victor's separate property account, rather than awarding the community the full $151,699.67 of community funds that he deposited into the account.

As we have explained, however, the sufficiency of the evidence is not open to review in a judgment roll appeal.  (*Bond, supra*, 50 Cal.App.4th at p. 924.)  We must presume the trial court's findings of fact and conclusions of law are supported by substantial evidence.  (*Ibid.*)  Sandra has not shown error and no error appears on the face of the record.

Sandra further contends the trial court erred in excluding evidence concerning Victor's misappropriation of community funds.  Specifically, she argues the trial court "erred in excluding admissible evidence in the form of records submitted by subpoena from Bank of America under seal at trial demonstrating that [Victor] secretly, and without [her] consent, transferred $51,500.95 between 2004 and 2009 from jointly-held bank accounts into his separate bank account . . . ."

Nothing in the limited record demonstrates that Sandra made known to the trial court the substance, purpose, and relevance of the excluded evidence such that we may

10

say a miscarriage of justice occurred.  (Evid. Code, § 354.)  Under the circumstances, Sandra has failed to meet her burden of providing a record establishing reversible error.

## DISPOSITION

The judgment is affirmed.  Each party shall bear their own costs on appeal.



               MAURO          , J.


We concur:


       NICHOLSON      , Acting P. J.


       HULL          , J.