[No. A051761. First Dist., Div. 5. July 18, 1991.]

DIANNE YOUNGWORTH et al., Plaintiffs and Appellants, v.
JENNIFER STARK et al., Defendants and Respondents.

**COUNSEL**

John Wm. Cumming for Plaintiffs and Appellants.

Mitchell, Dedekam & Angell and John M. Vrieze for Defendants and Respondents.

## OPINION

**HANING, J.**—Plaintiffs/appellants Dianne Youngworth and Eugene Hrynkiewicz appeal a judgment dismissing their personal injury action against defendants/respondents Jennifer and Phyllis Stark due to appellants' counsel's failure to comply with local delay reduction (fast track) rules. They also appeal the denial of their motion to vacate the judgment of dismissal. We affirm.

### PROCEDURAL HISTORY AND FACTS

In March 1990 appellants' attorney, Brian Workman, filed a complaint for personal injuries on their behalf in Humboldt County Superior Court. At the time, Humboldt County was voluntarily participating (Gov. Code, § 68618.5)[1] in a fast track program pursuant to the Trial Court Delay Reduction Act (TCDRA) (§ 68600 et seq.) and Humboldt County Superior Court Local Delay Reduction Rules, rule 13.1 et seq. Local rule 13.7 provides that for any failure to comply with local rules or court orders, unless good cause is shown, the trial court may impose sanctions upon the client and/or attorney including, but not limited to monetary sanctions and dismissal.

Almost immediately, Workman ran afoul of the local rules. On April 16, 1990, the court issued a minute order setting a date for hearing on whether to impose sanctions for Workman's failure to file appellants' answers to court-ordered standardized interrogatories within 10 days of filing the complaint, as required by local rule 13.5. The minute order had no attached proof of service, but had a handwritten "c.c." notation to Workman at his Anaheim address. The hearing was set for May 11. A minute order from the sanctions hearing states: "No appearance. Answers have been received. Dropped." Thereafter, respondents answered the complaint and cross-complained against appellants. Simultaneously, respondents' counsel wrote to Workman and sent him a copy of the local fast track rules; he also advised Workman that appellants had answered the wrong set of interrogatories, and that the Humboldt County Superior Court strictly enforced the local rules. The correct answers were subsequently filed after the deadline.

On June 12 the court issued a notice of status conference to be held on July 13, reminding the parties to file a diligence statement and status report within 100 days of the commencement of an action, as required by local rule 13.6. The notice included an affidavit of service by mail on Workman. Appellants' diligence statement was filed 15 days late.

---

[1]Unless otherwise indicated, all further statutory references are to the Government Code.

At the July 13 status conference Eureka attorney William Briody attempted to appear as cocounsel on behalf of appellants and Workman, but the court refused to recognize Briody's appearance in the absence of a formal association of counsel. The court imposed sanctions on Workman of $50 for failing to file timely answers to interrogatories and $150 for failing to appear. Payment of the $150 sanction was stayed "pending being present at the next hearing date or having association [of attorney] filed." The status conference was continued to September 14, with supplemental reports to be filed by September 7. The court's minute order of July 13 did not contain a proof of service, but had a handwritten "c.c: B. Workman" notation, inferentially indicating it was mailed to him. On July 31 a notice of association of attorneys was filed, associating Briody with Workman as appellants' counsel. On September 7 the court refused Workman's attempt to file the supplemental status report by fax filing, and the mailed copy of the report was not filed until September 14.

Neither Workman nor Briody appeared at the September 14 status conference. The court continued the matter to the September 24 dismissal calendar, at which time the case was to be dismissed unless good cause was shown and appellants' counsel was present. The court also imposed sanctions of $100 on appellants' counsel for failure to timely file the supplemental status report, vacated the stay on payment of sanctions, and ordered sanctions due and payable on September 24. The court's minute order had no proof of service, but again had a "c.c.: B. Workman" notation indicating mailing to him.

Neither Workman nor Briody attended the September 24 dismissal hearing. Respondents' counsel appeared, and advised the court that he had not received written notice that the matter would be on the dismissal calendar. However, he stated he "talked to [Briody] about this matter. I didn't follow up with a letter or anything like that." The court stated that the notice was sent to Workman, "who is the attorney of record." The court dismissed the action with prejudice, and a judgment of dismissal was entered on September 27. The judgment included an affidavit of service by mail on Workman. The judgment stated that no good cause was shown for appellants' counsel's failure to appear at the September 14 and September 24 hearings, file a status conference report, comply with the court's delay reduction rules, or abide by the court's previous orders.

Thereafter, appellants moved under Code of Civil Procedure section 473 to vacate the judgment on the grounds of excusable neglect. Workman's declaration in support of the motion stated that after becoming associated as an attorney of record, Briody was to cover all court appearances. Workman further declared that he *assumed* Briody had received the court's September

14 notice continuing the case until September 24, and *assumed* Briody would cover the appearance on that date. He also declared that the court clerk told another attorney in his firm that it was unlikely that Briody had been sent a written notice of the September 24 dismissal hearing. Workman did *not* allege that he had no notice of the September 14 and September 24 hearings and did *not* allege that he made any attempt to contact Briody to inform him of them, and confirm that the required court appearances would be covered.

Briody's declaration in support of the motion to vacate stated that he failed to appear at the September 14 status conference and September 24 dismissal hearings because he did not receive written notice from the court. He further declared that he "checked with [Workman's office] and there is no record of any status conference or dismissal calendar in their file." Briody does not declare *how* he "checked" Workman's files. This unspecific, and apparently hearsay, declaration appears to suggest that Workman had no written notice of the September 14 and September 24 hearings. However, as we previously stated, Workman's declaration makes *no* such claim. Further, Briody did *not* declare he was unaware of the dates set for the status conference and the dismissal hearing, and the record shows him *present in court* on July 13, when the court set the status conference for September 14 and ordered the supplemental reports to be filed by September 7. The undisputed declaration of respondents' counsel, submitted in opposition to the motion, confirms the record that at the July 13 hearing, both he and Briody were informed by the court that the status conference would be held on September 14 at 11 a.m.

The court denied the motion to vacate the dismissal after finding that appellants had not presented good cause for relief. The court's order states that (1) a copy of the July 13 minute order was sent to Workman, (2) Briody was present at the July 13 hearing and was advised of the September 14 hearing date, and (3) a copy of the minutes of the September 14 hearing and notice of the September 24 dismissal hearing were sent to Workman.

## DISCUSSION

### I

Appellants contend the court's dismissal of their action due to their counsel's noncompliance with the local delay reduction rules was an abuse of discretion because Code of Civil Procedure section 575.2, subdivision (b) prohibits dismissal when failure to comply with local fast track rules is attributable solely to counsel.

■ The management of the trial court's delay reduction program is an area within the court's discretion and will not be disturbed unless it appears that the exercise of that discretion was a clear abuse or a miscarriage of justice. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 498 [256 Cal.Rptr. 296].) Guiding the disposition of this issue are two competing policies: (1) the reduction of delay in litigation and the expeditious and timely resolution of cases, and (2) the resolution of cases on their merits rather than dismissal on procedural grounds. (See *Denham* v. *Superior Court, supra,* at p. 566; *Barrington* v. *A.H. Robins Co.* (1985) 39 Cal.3d 146, 152 [216 Cal.Rptr. 405, 702 P.2d 563]; *Holder* v. *Sheet Metal Worker's Internat. Assn.* (1981) 121 Cal.App.3d 321, 325 [175 Cal.Rptr. 313].)

■ The TCDRA represents the Legislature's decision to grant courts in designated counties wide procedural latitude in developing their own rules and procedures in order to reduce litigation delays that in some counties had reached "scandalous proportions." (*Laborers' Internat. Union of North America* v. *El Dorado Landscape Co.* (1989) 208 Cal.App.3d 993, 1001 [256 Cal.Rptr. 632]; *Beverly Union Co.* v. *Superior Court* (1988) 206 Cal.App.3d 40, 43 [253 Cal.Rptr. 359].)

The TCDRA established a three-year experimental pilot project commencing January 1, 1988 (§ 68608) and mandated nine counties to establish exemplary delay reduction programs. (§ 68605.) The nine designated counties were: Los Angeles, San Diego, San Francisco, Contra Costa, Kern, Alameda, Riverside, Orange, and Sacramento. (Concurrence in Sen. Amendments, Assem. Bill No. 3300 (1985-1986 Reg. Sess.) as amended Aug. 20, 1986.) The judges in each mandatory delay reduction county were given the responsibility to "eliminate delay in the progress and ultimate resolution of litigation, to assume and maintain control over the pace of litigation, to actively manage the processing of litigation from commencement to disposition, and to compel attorneys and litigants to prepare and resolve all litigation without delay, from the filing of the first document invoking court jurisdiction to final disposition of the action." (§ 68607.) The TCDRA required the judges of each program to establish procedures consistent with the policies of the TCDRA. (§ 68608.) Judges were encouraged to consult with the local bar in developing delay reduction procedures, standards and policies, which may be inconsistent with the California Rules of Court. (§ 68612.)

The TCDRA additionally required the Judicial Council, during the three-year pilot project, to collect and maintain statistics and to report to the Legislature by July 1, 1991, on the results of the delay reduction program and recommend whether the program should be adopted and, if so, which

procedures should be utilized statewide. (§ 68611; *Laborers' Internat. Union of North America* v. *El Dorado Landscape Co., supra,* 208 Cal.App.3d at p. 1001.) In essence, the TCDRA permitted the nine mandatory delay reduction counties to each adopt different local delay reduction rules, each imposing their own procedures, standards and policies.

■ The TCDRA was amended effective September 22, 1988, by Assembly Bill No. 3830 (Stats. 1988, ch. 1200). The primary purpose of the amendment was to clarify the intent of the TCDRA and "ratify and validate any local court rules adopted prior to the amendment which may have conflicted with statutory provisions." (*International Union of Operating Engineers* v. *Superior Court* (1989) 207 Cal.App.3d 340, 352, fn. 14 [254 Cal.Rptr. 782].) It also required more involvement by the Judicial Council, based on concern over confusion created by "contiguous counties adopting different local rules." (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.).) The Judicial Council was required to review all local delay reduction rules and rule revisions adopted by trial courts so that the rules were consistent, "to the extent desirable," with other court rules. (§ 68619, subd. (a).) In addition, pursuant to section 68619, subdivision (b), the Judicial Council was to adopt uniform delay reduction rules for any court that adopts a delay reduction program.

The amendment also added section 68618.5, which provides: *"Notwithstanding any other provision of law,* the Superior Courts of Humboldt, Napa, Yolo, Fresno, San Joaquin, and Santa Barbara Counties may establish exemplary delay reduction programs and adopt local delay reduction rules pursuant to this article. These rules *are not subject to subdivision (b) of Section 68619."* (Italics ours.)[2] Section 68619, subdivision (b) states: "The Judicial Council shall adopt uniform delay reductions rules which shall apply to any court that adopts a delay reduction program pursuant to section 68618." Section 68618.5 permits the superior courts in the seven voluntary counties to establish delay reduction programs and adopt their own local delay reduction rules. However, unlike the mandatory counties, courts in the voluntary counties are not subject to the Judicial Council's uniform delay reduction rules, or "any other provision of law . . . ." Section 68618.5 will cease to be operative on July 1, 1992, when the TCDRA becomes operative statewide. (Stats. 1990, ch. 1232 (Assem. Bill No. 3820) § 3.)

A review of the legislative history of Assembly Bill No. 3830 demonstrates the Legislature's determination to grant wide procedural latitude to

---

[2] In 1990 section 68618.5 was amended adding Sonoma County to the list of voluntary counties. (Stats. 1990, ch. 1232 (Assem. Bill No. 3820) § 3.)

courts in mandatory delay reduction counties and even wider latitude to courts in voluntary delay reduction counties. The Legislative Digest regarding Assembly Bill No. 3830 noted that the TCDRA of 1986 "envisioned nine separate pilot projects all responding to their peculiar local needs. At the conclusion of three years, the most effective and beneficial rules would be identified. It was theorized, that this kind of robust experimentation would produce rules that dramatically reduce delay." (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3830 (1987-1988 Reg. Sess.).)

While this "robust experimentation" may ultimately lead to rules that "dramatically reduce delay," during this three-year pilot period the Legislature has licensed a procedural free-for-all in trial court delay reduction rule-making. The voluntary counties, at least until July 1, 1992, have virtual plenary power to create their own local delay reduction rules.

Code of Civil Procedure section 575.1 is enabling legislation authorizing the promulgation of local rules by superior courts. Code of Civil Procedure section 575.2, subdivision (a) provides that local rules promulgated pursuant to Code of Civil Procedure section 575.1 may permit a wide variety of sanctions against parties and attorneys for noncompliance, including dismissal. But subdivision (b) of Code of Civil Procedure section 575.2 imposes limitations on such sanctions; it states: "It is the intent of the Legislature that if a failure to comply with these rules is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto." In *State of California* ex rel. *Public Works Bd.* v. *Bragg* (1986) 183 Cal.App.3d 1018 [228 Cal.Rptr. 576], the court held that the clear language of Code of Civil Procedure section 575.2, subdivision (b) means what it says: "[T]hat when *counsel* and not the party is responsible for the failure to comply with the local rules, any penalty '*shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto.*' " (*Id.*, at p. 1024; italics in original.) ▮ In the instant case there is no finding by the trial court, and no indication in the record nor suggestion by respondents that the failings of appellants' counsel were in any manner attributable to appellants. Nor is there any showing that appellants themselves had *actual* notice of the trial court's intent to dismiss their action.

Respondents rejoin that Code of Civil Procedure section 575.2 is inapplicable because the Humboldt County fast track rules were adopted pursuant to the TCDRA rather than Code of Civil Procedure section 575.1, and that unlike Code of Civil Procedure section 575.2, the TCDRA permits imputation of the attorney's negligence to the client and allows sanctions therefor. Respondents rely on section 68609, subdivision (d), which states: "In order

to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the program shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to achieve the purposes of [the TCDRA.]"

Whether section 68609, subdivision (d) supersedes Code of Civil Procedure section 575.2, subdivision (b) and permits fast track courts to dismiss actions or otherwise sanction parties for the failure of their attorneys to comply with the local rules is an issue which has not been clearly resolved. In *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491, the Court of Appeal for the Fourth District reversed a judgment of dismissal based on an attorney's failure to comply with San Diego County's local fast track rules, where there was no adequate notice to the client or showing that the client was responsible for the attorney's noncompliance. *Moyal* held that "[Code of Civil Procedure] sections 575.1, 575.2, 177.5, and California Rules of Court, rule 227, together with Government Code section 68609 [subdivision] (d), provide a comprehensive statewide scheme of regulation of fast track matters, which attempts to balance the need for expeditious processing of civil matters with the rights of individual litigants." (*Id.,* at p. 500.) *Moyal* concluded that "[t]he loss of a party's cause of action is a greater hardship than an attorney's loss of money through imposition of sanctions and accordingly requires more accurate and complete notice. The drastic measure of dismissal should only be used where there is a clear showing that the client is the cause of counsel's failure to comply with local fast track rules, e.g., where the client will not cooperate with or supply necessary material to his or her attorney or where no other reasonable sanction will produce compliance with the rules and orders of the court." (*Id.,* at p. 503.)

In *Cooks* v. *Superior Court* (1990) 224 Cal.App.3d 723 [274 Cal.Rptr. 113] the trial court denied a defendant's demand for jury trial due to defense counsel's failure to submit proposed jury instructions within the period required by Los Angeles County's local fast track rules adopted pursuant to Code of Civil Procedure section 575.1 and the TCDRA. The Court of Appeal for the Second District issued a writ of mandate directing the trial court to vacate its order striking defendant's jury request and to set the matter for jury trial. Citing *Moyal* v. *Lanphear, supra,* 208 Cal.App.3d 491 and *State of California* ex rel. *Public Works Bd.* v. *Bragg, supra,* 183 Cal.App.3d 1018, *Cooks* held that Code of Civil Procedure section 575.2 applied to fast track actions and precluded the denial of the defendant's constitutional right to a jury trial (Cal. Const., art. I, § 16) solely on the failure of defendant's attorney to comply with local fast track rules.

Recently, however, in *Intel Corp. v. USAIR, Inc.* (1991) 228 Cal.App.3d 1559 [279 Cal.Rptr. 569] the same division of the Court of Appeal that decided *Cooks* ruled that Code of Civil Procedure section 575.2 is inapplicable to fast track cases, and that dismissal based solely on counsel's failure to comply with local fast track rules is authorized by section 68609, subdivision (d). The *Intel Corp.* court dealt with its prior decision in *Cooks* in a footnote: "In *Cooks v. Superior Court* (1990) 224 Cal.App.3d 723, 727 [274 Cal.Rptr. 113], this court held that it was an abuse of discretion for a trial court to strike a party's request for a jury trial as a sanction for counsel's failure to submit proposed jury instructions at the time prescribed by the Los Angeles County fast track rules. Nothing in that opinion should be understood to contradict the holding we reach in this case." (*Intel Corp., supra,* 228 Cal.App.3d at p. 1566, fn. 6.)

The *Moyal/Cooks/Intel Corp.* trilogy is interesting, but we need not resolve the disparities between them here. All the published cases considering the issue of the propriety of sanctions in fast track cases are from mandatory delay reduction counties. The instant case is distinguishable in that it comes from a voluntary delay reduction county. Therefore, we need not decide whether section 68609, subdivision (d) supersedes Code of Civil Procedure section 575.2, subdivision (b) with respect to mandatory delay reduction counties. As we previously stated, section 68618.5 provides that, "[n]otwithstanding any other provision of law[,]" the Humboldt County Superior Court may adopt its own local delay reduction rules. The clear implication of this section is that voluntary delay reduction counties are not subject to the requirements of Code of Civil Procedure section 575.2, subdivision (b) unless they adopt local delay reduction rules that specifically so provide. Humboldt County's local delay reduction rules do not so provide. Consequently, imposition of sanctions in the instant case is not subject to Code of Civil Procedure section 575.2.

Taking into consideration the previous lack of compliance in the case and the inadequacy of prior sanctions (see, e.g., § 68609, subd. (d)), we conclude the trial court did not abuse its discretion in dismissing appellants' action. Appellants' counsel missed three court appearances of escalating importance, the last being a dismissal hearing. Counsel's repeated failure to appear, and the delay in filing timely reports and answers to interrogatories resulted in a waste of time and judicial resources, and defeated the legislative intent behind the TCDRA "to eliminate delay in the progress and ultimate resolution of litigation . . . ." (§ 68607.)

It is also clear that previous sanctions in this case were ineffective. After the court imposed monetary sanctions for failing to timely file answers to interrogatories and failing to appear at a scheduled status conference,

counsel failed to timely file a supplemental status report, and neither of appellants' attorneys appeared at the status conference which had been continued from the date originally set. Even after the court imposed further monetary sanctions on Workman for failing to file the supplemental status report, neither he nor Briody appeared at the dismissal hearing. Further, counsels' declarations in support of appellants' motion to vacate the dismissal contain mere excuses that are inadequate to provide relief. A court appearance is a significant step in the litigation process. This is particularly so when the court schedules a dismissal hearing on its own motion, based on counsel's previous failure to make court appearances and comply with local rules. The mistaken assumption that cocounsel will make the required court appearances does not constitute excusable neglect. Briody's contention that he was excused from attendance at the status conference because he did not receive written notice is unavailing, since he was personally present in court at the time the conference was scheduled. Consequently, the court could reasonably conclude that sanctions less severe than dismissal would be ineffective to obtain appellant counsel compliance with the local fast track rules.

We emphasize that this is not a case where out-of-town counsel was caught unaware of local rules. Defense counsel notified Workman immediately of the local rules—he sent him a copy and advised him that they were strictly enforced. In addition, Workman engaged a local attorney, Briody, who should have been familiar with the local court rules. Given these circumstances and the standard of review by which we are guided, we cannot say the trial court abused its discretion.

## II

■ Appellants further contend there was insufficient notice by the court of its intent to dismiss their action. Specifically, they argue that the court's mailing to Workman a copy of its September 14 minute order was insufficient notice because the order was unaccompanied by a proof of service, and the notice period was inadequate.

■ The imposition of sanctions always requires procedural due process. (*Caldwell* v. *Samuels Jewelers* (1990) 222 Cal.App.3d 970, 976 [272 Cal.Rptr. 126]; *Moyal* v. *Lanphear, supra*, 208 Cal.App.3d at p. 501; see also, *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651-654 [183 Cal.Rptr. 508, 646 P.2d 179].) Due process requires fair warning and an opportunity to be heard. (*Moyal, supra*, at p. 501.)

■ In the instant case the local fast track rules clearly provided adequate warning that sanctions could be imposed for failure of compliance.

Counsel bear the professional responsibility to be aware of and knowledgeable about local rules. (*Beverly Union Co.* v. *Superior Court, supra*, 206 Cal.App.3d at p. 43; *Laborers' Internat. Union of North America* v. *El Dorado Landscape Co., supra*, 208 Cal.App.3d at p. 1008.) In addition, although the September 14 minute order was sent to Workman with no accompanying proof of service, neither Workman nor Briody has ever contended they were unaware of the hearing. While a better practice would have been for the court to notify both Workman *and* Briody of the continuance of the case to the September 24 dismissal calendar, particularly because Briody was the local attorney of record, the court was not required to do so. If the attorney of record associates another attorney, it rests with them to divide the duties concerning the conduct of the case. (*Wells Fargo & Co.* v. *City etc. of S.F.* (1944) 25 Cal.2d 37, 43 [152 P.2d 625].) Consequently, notice to one attorney of record for a particular party is sufficient to satisfy due process requirements. Counsel erred by failing to sufficiently communicate with each other.

 ■ "The adequacy of notice, even when a trial court indicates an intent to impose sanctions on its own motion, should not depend upon an arbitrary number of days' notice but 'should be determined on a case-by-case basis to satisfy basic due process requirements. . . .' [Citation.]" (*In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1422 [257 Cal.Rptr. 850].) ■ In the instant case, 10 days elapsed between the September 14 minute order and the September 24 dismissal hearing. The record is silent as to when Workman received the September 14 minute order, but he does not contend he did not receive it soon thereafter, and does not contest its timing. Additionally, appellants had an opportunity to be heard on the dismissal issue at their hearing to request relief from default. That is sufficient for purposes of due process. (See *Cordova* v. *Vons Grocery Co.* (1987) 196 Cal.App.3d 1526, 1532 [242 Cal.Rptr. 605, A.L.R.4th 1440].)

Affirmed.

Low, P. J., and King, J., concurred.