[No. G011088. Fourth Dist., Div. Three. May 3, 1993.]

RACHELLE SIGALA, a Minor, etc., Plaintiff and Respondent, v.
ANAHEIM CITY SCHOOL DISTRICT et al., Defendants and Appellants.

COUNSEL

Liebman, Reiner & McNeil and Joseph R. Zamora for Defendants and Appellants.

Kananack, Murgatroyd & Baum and Paul J. Hedlund for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—The Anaheim City School District and Maria Rodriguez (the District) appeal a judgment on arbitration award entered in favor of Rachelle Sigala. The judgment was entered nunc pro tunc after the trial court struck the District's request for trial de novo; the latter action was a sanction for failure to enter into meaningful settlement negotiations.

I

Sigala filed a complaint against the District for personal injuries she incurred while a student at Thomas Jefferson Elementary School. She alleged that while playing on the "monkey bars" in the playground, she was

"grabbed" by another student, causing her to fall to the ground and sustain injury. The complaint sought $25,000 in general damages, medical expenses according to proof, and costs of suit.

The matter was assigned to arbitration in April 1990; a $20,250 award was made to Sigala; and the District requested a trial de novo in May. At a mandatory settlement conference (MSC) held in August (before Judge Francisco Firmat), defendant's counsel and the administrative representative from the coalition among the District and other school districts indicated the board's decision was to offer nothing in settlement.[1] The court indicated there was potential liability, asked the representative to relay that message to the 15-member joint powers authority (JPA), and continued the MSC to September.

The JPA, after reconsideration, affirmed its earlier position. At the continued conference, the Keenan representative announced the board's decision. Clearly, nothing was accomplished and the case apparently entered the assembly line of the superior court.

Another MSC was set in March 1991, this time before Judge Eileen Moore, who was told there had been no settlement offer during the prior conferences, pursuant to the decision of the JPA. The court stated it had been informed that the representative "does not have the authority to negotiate and to reasonably discuss settlement offers. . . .[2] For the school district to settle this case, a 15 member board must meet and each vote must be cast. No member of that board has the authority to be able to settle the case without the members being present. Therefore, the Court rules as follows: This case will be continued . . . until 2:00 this afternoon. At that time all 15 members of that board will be present in this courtroom to discuss *whether or not this case should be settled or to explain . . . their position to the court.*" (Italics added.)

The court further announced it would hold a sanctions hearing immediately following the continued settlement hearing. Sigala's attorney was

---

[1]The District states: "This representation was made by a representative from Keenan and Associates ('Keenan') a group of third party administrators appearing for the defendants on behalf of the Northern Orange County Self-Insured Authority (NOCSIA), a joint power authority (JPA)." Legislative authorization for the creation of these public entities appears at Government Code section 6500 et seq.

The District was a member of Northern Orange County Self-Insured Authority (NOCSIA), which was the body responsible for deciding what public monies could or should be allocated toward settlement of any suit against one of its members. NOCSIA in turn hired Keenan and Associates (Keenan), who dealt exclusively with school district legal problems, to represent it. Thus, Keenan was the designated representative at the settlement conference, albeit without any authority to settle.

[2]The court stated, "When I questioned her about whether she had the authority to settle the case, she informed me that she had been told that she was to not settle the case and that was the only authority she had."

informed: "If you feel you have incurred attorney fees by wasting your time here this morning because there is nobody present who can reasonably discuss settlement negotiations, you may inform the Court of that this afternoon at 3:00."[3]

The JPA group did not, nor did *any* member of its board, appear at 2 p.m. The court was not amused: "The defendants requested or at least gave no indication to the court that they did not want to go into the court arbitration system. The case was sent through the court arbitration system, the arbitrator awarded $20,250. From what [defense counsel] has informed me, Judge Firmat has specifically sent messages back to the board for them to put some value on this case because there is some value to the case. From the notes in the court file, it appears that Judge Rylaarsdam also informed the defendants there was some value to this case and some value should be put on it. I also informed the defendants there is a value to this case and some value should be put on it. *At the very least, the court has a right to have some representative of the defendants present to meaningfully discuss what should be done with this case.*" (Italics added.)

The court announced its tentative ruling to strike the request for trial de novo. An order to show cause hearing was set for April. The court informed the District it would, at that time, be allowed to present opposition to the intended ruling *and* could present witnesses.

Written opposition included a declaration by William Depew, president of the NOCSIA. He delineated the liability crisis impacting the school system, which prompted the banding together of the districts to become self-insured, pursuant to legislative direction; noted the makeup of the JPA, whose members work full-time in the schools and hire third party administrators to act on their behalf, overseeing the progress of litigation; and outlined the full consideration given to this particular accident and the necessity of a JPA vote "on the question of whether public funds should be authorized to attempt to resolve the lawsuit."

Depew stated, "We fully considered and were respectful of the arbitrator's and court's opinions, nevertheless *our analysis and experience in the trial results of cases with these facts dictated that we defend the case.*" (Italics added.) Once that decision was made, "there was no one individual who could have authorized a settlement. It is my understanding that the reason that no single individual is authorized to effect a settlement is to prevent any one person from committing public funds." He concluded by noting the

---

[3]The court announced the hearing would be held pursuant to California Rules of Court, rules 222 and 227, Code of Civil Procedure section 128.5 and the local rules.

court's attendance requirement could not have been legally met in any event: "Under the laws as the Board understands and applies it [*sic*], notice of a Board meeting, including ours, must be given 72 hours beforehand. Thus, without such notice, the Board does not act in accordance with proper mandated procedure."

In April, the court struck the request for trial de novo: "It appears to be clear to this court that defendants have made no good faith attempt and have no intention of making any good faith attempt at complying with the rules of court which require that all parties participate in good faith at a settlement conference. . . . After the court provided these parties with its facilities for four settlement conferences and the defendants never once sent a person with authority, the court gave them a fifth opportunity to bring the person or persons with authority. They chose not to come or to explain why they did not come. The court views this as an interference with the proceedings of the court."

## II

### *Applicable Rules*

California Rules of Court, rules 222 and 227,[4] provide as follows: Rule 222 (c): "Trial counsel, parties, and *persons with authority to settle the case shall personally attend* the conference, unless excused by the court for good cause." (Italics added.) Rule 227: "The failure of any person to comply with these rules, *local rules*, or order of the court, unless good cause is shown, or *failure to participate in good faith in any conference those rules or an order of the court require*, is an unlawful interference with the proceedings of the court. The court may order the person at fault to pay the opposing party's reasonable expenses and counsel fees, and reimburse or make payment to the county, and may order an appropriate change in the calendar status of the action, *in addition to any other sanction permitted by law*." (Italics added.)

Local Rules 422 and 1125, as then in effect, provided: defense counsel *shall* "[h]ave the defendant present [and] a claims representative, or in the case of self or uninsured defendants, an authorized agent of the defendant present at the conference *with settlement authority* [and] [b]e prepared to make a good faith offer of settlement." (Local Rule 422(E)(2), (3) & (4), italics added; the present MSC requirements appear in Local Rule 448.) "Upon notice and after hearing, if the court finds any counsel . . . has failed to comply with these local court rules and has not proceeded with due

---

[4]Future reference solely to a "Rule" will refer to one of the California Rules of Court. An Orange County Superior Court Local Rule will be designated as "Local Rule."

diligence in preparing the case for trial, the court, on motion of a party or on its own motion, may: 1) strike all or any part of any pleading of that party; 2) dismiss the action or proceeding or any part thereof; 3) enter a judgment by default against that party; 4) impose other penalties of a lesser nature as provided by law, and/or; 5) order that party or his or her counsel to pay the moving party the reasonable expenses incurred in making, and/or appearing at the hearing of, the motion, including reasonable attorney fees." (Former Local Rule 1125; this language now appears, verbatim, in Local Rule 454.)

In addition, at the time the matter was heard, Government Code section 68609, subdivision (d) (repealed eff. July 1, 1992) provided: "In order to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the program shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to achieve the purposes of this article."

## III

### Failure to Appear

In its sanction order, the trial court noted that, at the March morning hearing, only the attorneys, the plaintiffs and " 'Maria, an insurance adjuster' appeared. [¶] It became immediately apparent that no representative of the defendants was present who was capable of conducting a meaningful settlement conference. Maria admitted that her only authority was to refuse to settle." When informed only the full board could discuss settlement, the court "requested that the board designate one or more members as their representatives for the purpose of settlement discussion. Both the defense attorney and Maria assured the court that this was not possible as only the entire board could discuss settlement." That being the only entity with settlement authority, the entire board was ordered to appear that afternoon.

At the continuance, to 2 p.m. that day, the court was informed "not one single member of the board was able to come and that the J.P.A. was not set up so as to be able to comply with the Orange County Rules of Court." The court concluded the defendants had made no good faith attempt to comply with the rules of court and "deliberately refused to comply" with the court's order for the board to appear.

We sympathize with the court's impatience with these defendants. By aligning themselves with the JPA, whose internal procedures effectively block any meaningful communication with the court under the

circumstances of this case, they concluded no response to the court's orders was necessary. We find this position untenable.

The defendants claim they were punished because "they failed to satisfy *the court's perception* of what was required at a mandatory settlement conference." (Italics added.) However, the "court's perception" was correct. ▪ A trial court possesses "the inherent power to require by policy that [defendants] be physically present at the mandatory settlement conference. A court may not compel a litigant to settle a case, but it may direct him to engage personally in settlement negotiations, provided the conditions for such negotiations are otherwise reasonable." (*Wisniewski* v. *Clary* (1975) 46 Cal.App.3d 499, 505 [120 Cal.Rptr. 176], italics added.) "Once an individual [or District] chooses to litigate, [it] should be prepared to bear the ordinary and reasonable burdens of litigation—whether those be in the preparation of the case for trial, discovery, *pretrial conferences*, trial or post trial proceedings." (*Id.* at p. 506, italics added.) "Rule 222 provides for mandatory settlement conferences and authorizes other or additional conferences upon request of all parties or by order of [the] court. Trial counsel, parties and *persons with authority to settle the case* must personally attend such conferences unless excused by the court for good cause." (*Raygoza* v. *Betteravia Farms* (1987) 193 Cal.App.3d 1592, 1595 [239 Cal.Rptr.188].)

In *City of El Monte* v. *Takei* (1984) 158 Cal.App.3d 244 [239 Cal.Rptr. 188], an MSC was set and continued twice to allow attorneys for the cross-defendant and his insurance carrier to "become familiar with the case and be in a position to talk about possible settlement." (*Id.* at p. 247.) At the continued hearing, no one with the authority to settle appeared. The attorneys' excuse "was that [the] carrier had a cumbersome means of determining the amount that should be paid in any given case." (*Id.* at p. 249.) Although given a three-month continuance, the attorneys stated the time was insufficient and more would be needed. Nonsense, said the court: "This is a third round. . . . [Y]ou and your clients have stuck your head in the sand. . . . [E]ven if [the claims person] showed up, he didn't have any authority, and the only authority is some committee of this company that meets on June 7th and hasn't had time to review the case, and that you're not prepared and a bunch of other sad stories that are just absolutely bunk." Money sanctions were imposed.[5] We note that former Rule 217 solely allowed the sanctions of expenses, fees and "an appropriate change in the calendar status of the action." Rule 227, the successor to Rule 217, now adds "any other sanction permitted by law."

---

[5]The appellate court held the sanctions could be imposed, but needed to be reconsidered. The trial court was limited to imposing only "reasonable expenses and counsel fees." (*Id.* at p. 250.)

The Los Angeles courts had local rules much like those applicable to these parties at the time of the MSC's, and the forerunner of Rule 227 was in effect. The *El Monte* court made clear that the local rules "are enforceable as general court rules." (158 Cal.App.3d at p. 248.) ■■■ Thus, the required appearances at an MSC are mandatory. The court also observed "the realities of the legal system [—] the backlog of cases . . . . Obviously, the only way that a court can run any kind of meaningful settlement conference is to require the parties to appear and try to settle the case. Although the court may not force a litigant to settle, it may nonetheless order him to appear and at least engage in the settlement negotiations. [Citation.] [Local] Rule 11, its wording, and the reason for the rule all compel the same conclusion—it is mandatory that all of the people mentioned in [local] rule 11 attend the mandatory settlement conference." (*Ibid.*)[6]

In *Evarone* v. *Twentieth Century Hosts, Inc.* (1979) 98 Cal.App.3d 90 [159 Cal.Rptr. 294], an action by an attorney for unpaid fees, a settlement conference was set for June 1978. Plaintiff was present, but there was no appearance by either the defendant or its attorney. The trial judge issued an order "to show cause why defendant's answer should not be stricken and the matter allowed to proceed as a default . . . ." (*Id.* at p. 92.) At the hearing, the president of defendant appeared with a new attorney (the former one was fined $150) and was granted a continuance to find yet another attorney. On the date set for that hearing, no one appeared for the defendant; the motion to strike was granted; and the trial court denied a motion to set it aside. Reversal on appeal was based on the following statement: "We hold the lower court erred in invoking the ultimate sanction of striking defendant's answer. While the court has power to compel obedience to its orders [citation], its power is not plenary. [Citation.] Nowhere in statute, California Rules of Court, case law, San Diego local court rule or published policy is the sanction of dismissal, or its counterpart, striking the answer, recognized as an appropriate sanction for failure to attend a settlement conference." (*Id.* at p. 93.)

First, Rule 227 now adds the "any other sanction permitted by law" language. Second, even the *Evarone* court discussed the possibility of striking a defendant's answer where the sanctioned activity was "of the type of

---

[6]Los Angeles Superior Court rule 11 provided in pertinent part: "Unless expressly excused for good cause by the judge with notice thereof given in advance to adversaries by the party requesting such excusal, all persons whose consent is required to effect a binding settlement should be personally present at a mandatory settlement conference. Included among such persons are:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) an authorized representative of any insurance company which has coverage involved in the case; and

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"Such persons should have full authority to make decisions and negotiate concerning the case."

flagrancy justifying deprivation of a litigant's day in court." (*Evarone* v. *Twentieth Century Hosts, Inc., supra*, 98 Cal.App.3d 90, 96.) There, the facts were insufficient to invoke that sanction: Defendant was seeking new counsel, the amount at stake was substantial and contested, and defendant's president declared she believed the new trial date canceled the settlement conference and she was willing to discuss settlement when her new attorney was apprised of the facts of the case.

As discussed *post*, striking the defendants' request for trial de novo was inappropriate here *in the first instance*. Nonetheless, a caveat is in order—unlike the situation in *Evarone*, we find few factors which would remove this case "from the 'narrow range of discretion' justifying imposition of the ultimate sanction." (*Evarone* v. *Twentieth Century Hosts, Inc., supra*, 98 Cal.App.3d 90, 96.) There was no attempt made to change their procedures to accommodate the court, to abide by the state or local court rules, to respond to an order of the court, or to have *anyone* present to allow the court to speak with the *affected* parties about their exposure.[7] The court has the right, if not the duty, to "look them in the eye" and try to settle the matter; this is particularly true where the amount at issue is so minimal.

We hasten to add that the major purpose of a settlement conference is not to "clear the docket," but to achieve justice. For the litigants, settlement may be the best method of reaching this goal. And even when a settlement is not achieved, the dialogue may narrow the issues for trial. Each party is able to gain valuable insight into the viability of the opponent's position as well as perhaps unperceived weaknesses in its own case.

Moreover, continued refusal to comply with the MSC rules seriously delays not only the case at issue but others as well. "The Judicial Council is expressly authorized by article VI, section 6 of our Constitution to make recommendations to the courts to improve the administration of justice. One such improvement is the mandatory settlement conference because through this device many cases are disposed of without trial, and delay in the trials of the remaining cases is thereby reduced." (*Wisniewski* v. *Clary, supra*, 46 Cal.App.3d 499, 503.) Here, the trial court noted the "ever increasing backlog of cases. For these cases to be processed as quickly and equitably as possible, it is necessary for all parties to make good faith efforts at resolving matters if they can be resolved. Granted, some matters cannot be settled and must be tried to a jury. However, the court attempts to resolve as many

---

[7]Defense counsel insists the JPA is merely trying to conserve public funds. However, as noted by Sigala, "Talk about committing public funds, what are they paying these lawyers? Nothing? They have committed public funds, but only for one thing, for lawyers to drag this out and to offer absolutely nothing. . . ."

matters as possible by putting into effect a system of arbitration for the smaller cases and by providing the parties with the court's personnel and facilities for the purpose of settlement discussions. But, at those settlement conferences, the court does require that persons with authority be present so that, if the case does not settle, the court can be assured that all reasonable routes to settlement were taken."

■ We are similarly unimpressed with the District's insistence that compliance is essentially impossible because the court has no "authority over the JPA members who were not members or employees of defendant Anaheim City School District" and "internal administrative procedures required 72 hours notice for a meeting of the full JPA board." The Legislature has sanctioned the joining together of school districts as a means of economically instituting a self-insurance program. Nonetheless, it also mandated enactment of the MSC rules. Those rules require the attendance of, not only the parties and their trial counsel, but also "persons with authority to settle the case . . . ." (Rule 222(c).) There is no indication that a joint powers entity is exempt.

Moreover, Government Code section 6503, governing the content of a joint powers agreement, allows the contracting parties, within that agreement, to "provide for the method by which the purpose will be accomplished or the manner in which the power will be exercised." (Gov. Code, § 6503.) Although at liberty to provide their own internal operating procedures, the school districts do not have license, by setting up a JPA, to place themselves beyond the reach of the law. Notwithstanding the full-membership-vote and 72-hour-notice requirements, there is no reason that the board chairperson or a "settlement subcommittee" could not be sent to an MSC.

Contrary to the District's insistence, the trial court was not demanding that a cash settlement be offered. It merely requested, at the very least, that a live, responsible contingent of the JPA appear "for the purpose of settlement *discussion*." (Italics added.)

■ We are appalled to find that the JPA refused to respond in person to the court. Not even the chair, with or without actual authority, made an appearance. The JPA concluded it was exempt from the rules. This stance looms dangerously close to the "flagrancy" referred to in *Evarone* and,

should that adamancy continue after remand, it may well subject the defendants to a motion to strike their answer.[8]

## IV

### *Sanction Imposed*

■ Rule 227, Local Rule 1125 and Government Code section 68609 could provide a basis for imposing the ultimate sanction (such as striking the answer),[9] i.e., it is "any other sanction permitted by law" (Rule 227) as mentioned in Local Rule 1125.

The continuing refusal to bring a representative with settlement authority resulted in several useless sessions before the court, entailing a waste of judicial time and effort, as well as that of the support services of the superior court. The plaintiff, her mother and counsel have traveled numerous times to Orange County from Los Angeles, only to find nothing could be accomplished. This is a severe and intentional interference with the court's mandate to "reduc[e] . . . delay in litigation and [encourage] the expeditious and timely resolution of cases . . . ." (*Youngworth* v. *Stark* (1991) 232 Cal.App.3d 395, 401 [283 Cal.Rptr. 668].)

Nonetheless, the sanction here imposed—striking the request for trial de novo—deprives the defendant of its day in court without sufficient notice. We reluctantly find the sanction excessive for two reasons. First, when the court ordered the JPA to appear on the afternoon of March 14, it also announced a sanction hearing would be held immediately thereafter; Sigala was informed (1) attorney fees would be discussed at that time, and (2) the sanctions hearing would be "heard pursuant to California Rules of Court 222 and 227, Code of Civil Procedure section 128.5, Orange County Rules of Court 422 and 1125." There was no mention of striking the request for trial de novo.

■ Second, the ultimate sanction is rarely, if ever, proper in the first instance. Giving the defendants the benefit of the doubt, and there being nothing in the record to the contrary, it appears the defendants were (at least

---

[8]We note the trial court in *City of El Monte* v. *Takei, supra,* 158 Cal.App.3d 244 apprised the defendants to pay the imposed sanctions within 48 hours or " 'the City of El Monte's motion may be brought on to strike the Answer of the cross-defendant.' " (*Id.* at p. 250.)

[9]We question whether striking the request for trial de novo and reinstituting the arbitrator's award is a proper sanction for repeated refusal to attend an MSC. Nonetheless, once the case is again on the assembly line and headed toward trial, the court has at its disposal the full panoply of sanctions outlined in the California Rules of Court, the local rules, and the Government Code.

during the first two hearings) led to believe they need not produce anyone from the JPA.[10] That hope was dashed on March 14; when the JPA failed to appear that afternoon, the sanction was tentatively announced.

Rule 227 clearly provides for *monetary* sanctions in this situation. However, Government Code section 68609 "confirms the intent of the Legislature that a dismissal sanction should be imposed only if it appears less severe sanctions would not be effective, *taking into account the effect of previous sanctions or previous lack of compliance with court orders or deadlines in the case.* This legislative approach is consistent with long-standing judicial policy, also adopted by Government Code section 68601(c), that cases should be resolved on their merits rather than on procedural grounds wherever possible. [Citation.]" (*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 502 [256 Cal.Rptr. 296], italics added.) Here, there were no earlier refusals to comply with court orders or prior sanctions imposed. The District should be given another chance to have its self-insurer comply with the law and the orders of the court.

The order striking the defendants' request for trial de novo is reversed. The court is directed to set a hearing date for imposition of such monetary sanctions as it deems appropriate. It may also order an MSC to be attended in person by those persons and/or entities contemplated by the state and local rules. Parties to bear their own costs on appeal.

Sills, P. J., and Crosby, J., concurred.

**SILLS, P. J.**—I wholeheartedly concur with the majority opinion, but write separately to express some thoughts which result from having served in municipal government and having conducted innumerable settlement conferences both as a trial judge and as a member of this court.

City councils, school boards, special districts and other government bodies simply must pay more attention to the litigation process. They must understand that a settlement conference in the trial court is an extremely important

---

[10]We note trial counsel's concern below, namely, that they had *always* negotiated with the third party representative present. He had never been threatened with sanctions should the JPA, or someone with actual settlement authority, not personally appear: "It puts the matter in great difficulty when we come down and find that the procedure we have been following ostensibly with the approval of the court is no longer valid." We hasten to remind counsel that, in this instance, he *was* forewarned. During the March morning session, the JPA was ordered to appear that afternoon. There was no appearance. When the April hearing was set, the court specifically announced witnesses could be presented at that time. Even with a month's notice, counsel chose to rely on a self-serving declaration by the JPA president, rather than make any attempt to comply, or produce an authorized person to explain that lack of compliance, with the order of the court.

and integral phase of a lawsuit and in the vast majority of cases, the final phase. Prior to a settlement conference, the government body should analyze its position with counsel and designate at least one of its members or high-ranking executives to attend the conference with authority to discuss settlement, conditional, of course, on final approval of any proposed settlement by the governing body.

If, on the other hand, the decision of a board is to litigate—to fight to the bitter final judgment—a high-ranking staff member of the body should attend the conference and be prepared to discuss this position with the court. The cry to battle is so alien to a civil court judge's thinking, and so counterproductive to the management of today's burgeoning case load, that there must be some explanation for it. Common sense and common courtesy demand no less.

Of course, I do not wish to imply that a court may or should require any party to make a settlement offer. There are, indeed, cases which should not be settled. They are rare, but they do exist. Morals and principles sometimes preclude settlement. Obviously, refusal to make an offer is not in and of itself synonymous with failure to participate in settlement discussions in good faith. However, refusal even to attend a settlement conference to *discuss* a "no settlement" position with the court may constitute bad faith. (Cf. *City of El Monte* v. *Takei* (1984) 158 Cal.App.3d 244, 249-250 [204 Cal.Rptr. 559].)

The easiest thing to do in an era of automobile telephones is for the busy and overburdened board member or executive to simply say, "Lawyer, you handle the problem and don't bother me until it's resolved." The beleaguered trial judge, on the other hand, frequently wants to discuss the case directly with a board member or other officer of the body involved in the litigation. Not confident that the attorney has been able to candidly communicate with the client, the settlement judge frequently wants to explain the exposure which, in the judge's opinion, the government (or corporate) entity faces.

Judges experienced in conducting settlement conferences have all too frequently encountered the busy CEO (chief executive officer) who has never grasped the risks inherent in the litigation until literally forced to do so by a judge. And, all too frequently, the CEO tells the judge, "I didn't understand the problem we had—I should have looked at this more closely a long time ago—thanks for your help." Indeed, there may even be times when it is important for the settlement judge to speak directly to the entire governing board of a government or corporate body to explain the wisdom of reanalyzing a "no settlement" position. Many judges have seen nominal

settlement offers changed to substantial settlement offers once a board has had the benefit of the judge's experience.

At oral argument in this case, appellants contended the Ralph M. Brown Act (Gov. Code, § 54950 et seq.), which generally forbids secret meetings of governing boards of public bodies, prohibits a local government from complying with court rules requiring parties to attend settlement conferences. Their argument goes something like this: since a settlement can be approved only by a majority vote of the school district board of directors and since a majority vote can only be taken during a duly noticed meeting, it is impermissible for a board to meet and discuss settlement at a settlement conference, which is, after all, not an "official" meeting duly noticed to the public. This argument disintegrates upon careful analysis.

Under the appellants' theory, board members of a government entity in litigation can never attend a settlement conference—or any other court proceeding. The law does not contemplate absurd results. (E.g., *People* v. *Thomas* (1992) 4 Cal.4th 206, 213 [841 P.2d 159]; *Central Pathology Service Medical Clinic, Inc.* v. *Superior Court* (1992) 3 Cal.4th 181, 191 [10 Cal.Rptr.2d 208, 832 P.2d 924].) Public policy in favor of settlement and the Brown Act are hardly mutually exclusive. The Legislature never intended the Brown Act to become an excuse to thwart the orderly disposition of public litigation (Gov. Code, § 54956.9 [procedures allowing government entity to hold closed session with legal counsel regarding pending litigation].)

More to the point, the suggestion that all or a majority of a board is prohibited by the Brown Act from attending a settlement conference is simply wrong. Ample authority for a majority to attend a settlement conference is found in Government Code section 54956.9.

A government body subject to the Brown Act is functionally no different than a private corporation, a body of the federal government or a quasi-government body such as the Resolution Trust Company. In each instance proposed settlements must be submitted to a governing board for formal approval. The usual means by which such bodies cope with the problem of the need for collective approval of settlements is to give guidelines to one of their members or *high-ranking* executives *in advance* of a settlement conference.

Advance preparation for a settlement conference should alleviate any concerns about findings or required notices. There is nothing incompatible between the Brown Act and the court rules once it is recognized that any

final settlement is always subject to full board approval. When a settlement is reached which is contingent on board approval, the judge normally continues the settlement conference or simply retains jurisdiction so that in the event approval of the final settlement is not forthcoming, negotiations can begin anew. In the case of a government entity, it is always understood that any final settlement necessitates formal action by the board at a meeting held in accordance with the provisions of the Brown Act. Such deliberations may be held in executive session. (See Gov. Code, § 54956.9 [authority to hold closed session to discuss pending litigation]; see also § 54956 [authority to call special meetings].)

With the power of governance comes responsibility, and that responsibility may mean being required to attend settlement conferences. Members of governing boards of public entities must recognize the importance of these conferences to the orderly administration of justice. In this extreme case, the public entity flouted court rules and totally frustrated the settlement judge's attempts to communicate with anyone in a position of responsibility.

Crosby, J., and Sonenshine, J., concurred.