[No. C016248. Third Dist. June 27, 1994.]

VALERIE MARRIAGE, Plaintiff and Appellant, v.
MARILYNN M. KEENER et al., Defendants and Respondents.

188

**COUNSEL**

Luke G. Conley III for Plaintiff and Appellant.

Downey, Brand, Seymour & Rohwer and Fred A. Dawkins for Defendants and Respondents.

## OPINION

**NICHOLSON, J.**—Valerie Marriage appeals from the trial court's dismissal of her action to quiet title. She challenges the dismissal of her adverse possession cause of action, which the court found barred by the doctrine of laches, and the dismissal of a defendant as a sanction for failure to effect timely service. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 3, 1991, Valerie[1] filed this action to quiet title to four contiguous parcels of real property in Carmichael, asserting she had acquired title to these parcels by adverse possession.[2] The four parcels are referred to in the pleadings as 4200 Walnut Avenue, 4210 Walnut Avenue, 5125 Cypress Avenue, and "the French property."[3]

The defendants to this action are the estates of Ira and Frances[4] Marriage (Valerie's father-in-law and mother-in-law), Lois Fetterolf (Ira and Frances's daughter), Martin and Marilynn Keener (Ira and Frances's daughter and son-in-law), and National Research Foundation.[5]

Valerie alleged she openly and exclusively possessed the parcels and acquired title by virtue of adverse possession on dates ranging from 1966 to 1979. She jointly occupied the parcels with her husband, Lawrence, who died in 1986. Although the record is not entirely clear, for at least some portion, if not all, of the period when Valerie asserts she and Lawrence were adversely possessing the subject properties, Ira and Frances, now deceased, were the record owners of the parcels.[6]

In their trial brief, defendants for the first time contended the doctrine of laches barred Valerie's adverse possession claim. Defendants argued laches

---

[1]We refer to plaintiff by her first name for ease of reference, due to the sharing of the same surname by several of the parties.

[2]The complaint also set forth causes of action for fraud and intentional infliction of emotional distress.

[3]Neither Valerie's "Statement of Facts," nor her argument concerning the dismissal of defendant National Research Foundation, contains any citations to the record. Rule 15(a) of the California Rules of Court, requires "[t]he statement of any matter in the record shall be supported by appropriate reference to the record."

[4]The estate of Frances Marriage subsequently was dismissed as a party to this action.

[5]Ira was the founder and president of National Research Foundation, and held 97 percent of its shares. The remaining 3 percent of the foundation's shares formerly were held by Ira and Frances's three children: Lawrence Marriage, Lois Fetterolf, and Marilynn Keener. Ira and Frances apparently conveyed their interest in the subject parcels to the foundation.

[6]With respect to the 4200 Walnut Avenue parcel, Valerie and her late husband were granted an undivided one-half interest as joint tenants on July 30, 1970. The remaining one-half interest was granted to Ira and Frances on the same date.

was demonstrated on the face of the complaint by virtue of the allegation of adverse possession claims perfected 26, 23, 17, and 13 years earlier. Defendants also argued prejudice from Valerie's delay due to the intervening deaths of Ira, Frances, and Lawrence.

The trial court requested supplemental briefing on the laches issue, and subsequently dismissed Valerie's adverse possession claim on this ground, noting three important witnesses—Ira, Frances, and Lawrence—were deceased, and a prior 1986 action by Valerie for specific performance failed to raise an adverse possession claim despite involving rights to the same parcels of real property.[7] The court dismissed National Research Foundation from the action as a sanction, due to Valerie's failure to serve the Foundation until April 29, 1993. The court granted Valerie's motion to dismiss the remaining causes of action for fraud and emotional distress without prejudice, and this appeal followed.

## DISCUSSION

### I

■ "The question of laches must be determined in each case upon the basis of its facts and in the absence of a palpable abuse of discretion the trial court's finding on that issue will not be disturbed on appeal." (*Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 235 [69 Cal.Rptr. 251].) ■ However, because laches was not a defense to Valerie's assertion of title by adverse possession, we reverse the trial court's finding.

■ Laches requires "a showing of unreasonable delay on the part of the plaintiff in bringing the action, which may show abandonment or waiver of a right, or the acquiescence by the plaintiff in the defendant's fault." (*City of Highland* v. *County of San Bernardino* (1992) 4 Cal.App.4th 1174, 1192 [6 Cal.Rptr.2d 346].) Although the doctrine of laches is often asserted in cases involving adverse possession, typically the facts involve a defendant adverse possessor asserting laches as an additional defense against a plaintiff record owner's action to recover the property. (See, e.g., *Gerhard* v. *Stephens* (1968) 68 Cal.2d 864 [69 Cal.Rptr. 612, 442 P.2d 692]; *Laubisch* v. *Roberdo* (1954) 43 Cal.2d 702 [277 P.2d 9].) The interrelated nature of laches and adverse possession creates an inherent incongruity to finding laches a defensive bar to a claim of adverse possession. (See *Richmond Cedar Works* v. *Pinnix* (D.N.C. 1913) 208 F. 785, 795 ["[i]t is said that the ground upon

---

[7]The trial court granted judicial notice of, and the record contains, a verified complaint for specific performance filed by plaintiff in July 1986 against Ira and Frances, their two daughters, and National Research Foundation. This complaint also involved the subject parcels and was dismissed for lack of prosecution in the course of the instant lawsuit.

which the disseisor acquires title by adverse possession is the laches of the owner"]; *Berger* v. *Horsfield* (1919) 188 A.D. 649 [176 N.Y.S. 854, 856] ["title gained by adverse possession rests upon the laches of the real owner who fails to assert his title against the one claiming adversely . . . ."].)

Defendants cite no cases holding laches to bar a claim of adverse possession, and apparently no published California opinion so holds. Other jurisdictions addressing this issue have reached the opposite conclusion. (*Williams* v. *Rogier* (Ind.App. 1993) 611 N.E.2d 189, 196 [laches inapplicable to adverse possessors]; *Lewis* v. *Johnson* (Ala. 1987) 507 So.2d 918, 921 [laches does not apply "to one in adverse possession of land who resorts to a court of equity to settle a question of title, no matter how long the delay"]; cf. *Village of Larchmont* v. *City of New Rochelle* (1979) 100 Misc.2d 463 [418 N.Y.S.2d 966, 969] ["[a] fee title cannot be destroyed by delay in the exercise of the right thereto. . . . Laches cannot deplete legal title for the law exacts no diligence as a condition to the retention of title to property"].)

█ "Laches is an implied waiver resulting from knowing acquiescence in existing conditions and an inexcusable delay in asserting a right which results in prejudice to the adverse party. [Citation.] █ In other words, laches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it. [¶] . . . Fee simple title vests in the adverse possessor by operation of law at the moment the requisite conditions for adverse possession have been established for the statutory period. [Citation.] The adverse possessor is not required to take any further steps to acquire title once those conditions have been met. The statute of limitations runs against the title holder, not the adverse claimant. [Citation.] [¶] The [adverse possessors] asserted their claim by maintaining adverse possession of the disputed area for the entire statutory period. There was no significant delay because the [adverse possessors] were under no obligation to take further action once they had acquired title by operation of law." (*Williams* v. *Rogier*, *supra*, 611 N.E.2d at p. 196.)

California law does not require a plaintiff to bring an action to perfect his or her claim of adverse possession. Rather, it is the record owner—not the intruder—who must bring an action within five years after adverse possession commences in order to recover the property. (Code Civ. Proc., § 318.) "Occupancy for the [five-year] period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all . . . ." (Civ. Code, § 1007.) "[W]hen fee is once acquired by a [*sic*] five years' adverse possession it continues in the possessor till conveyed in the manner prescribed for the conveyance of titles acquired in other

modes . . . ." (*Cannon* v. *Stockmon* (1869) 36 Cal. 535, 541; see also *Applebey* v. *Lenschow* (1986) 144 Ill.App.3d 2008 [98 Ill.Dec. 40, 494 N.E.2d 529, 533] ["upon expiration of the [statutory limitation] period, the holder of land by adverse possession obtains the title which can only be divested by the conveyance of the land to another or by a subsequent disseisin for the statutory limitation period"].)

■ "Title to property acquired by adverse possession matures into an absolute fee interest after the statutory prescriptive period has expired. Thus, adverse possession for the requisite period of time not only cuts off the true owner's remedies but also divests him of his estate. . . . [S]uch title [by adverse possession] may not be divested . . . by mere failure to assert title after it has been perfected." (7 Powell on Real Property (1994) ¶ 1017, pp. 91-109 through 91-111, fns. omitted; see also *LaGrange Reorganized School Dist.* v. *Smith* (Mo. 1958) 312 S.W.2d 135, 139 ["adverse possession for the statutory period establishes an indefeasible legal title in the possessor, the title of the record owner is divested and, unlike the easement cases, that title is not lost by . . . mere failure to assert title after it has been perfected"].) ■ Valerie was under no obligation to bring an action to perfect her claim of adverse possession, and the fact she allegedly acquired her title to the properties many years ago is simply irrelevant.

Defendants argue laches is implicated due to Valerie's 1986 lawsuit. However, as noted above, "laches addresses delay in the pursuit of a right *when a party must assert that right in order to benefit from it.*" (*Williams* v. *Rogier, supra,* 611 N.E.2d at p. 196, italics added.) Since Valerie was under no obligation to assert her claim of adverse possession, her previous action——which did not allege adverse possession of the properties, was not pursued, and was dismissed for lack of prosecution in the course of the present lawsuit—does not support dismissal of her adverse possession claim on the ground of laches.

Defendants also assert prejudice due to the intervening deaths of three likely witnesses. ■ "To establish title by adverse possession, the claimant must establish the following five requirements: 1) Possession under claim of right or color of title; 2) actual, open, and notorious occupation of the premises in such a manner as to constitute reasonable notice to the true owner; 3) possession which is adverse and hostile to the true owner; 4) possession which is uninterrupted and continuous for at least five years; and 5) payment of all taxes assessed against the property during the five-year period. [Citations.]" (*Buic* v. *Buic* (1992) 5 Cal.App.4th 1600, 1604 [7 Cal.Rptr.2d 738].) Equity abhors a forfeiture (*Hopkins* v. *Woodward* (1932) 216 Cal. 619, 622 [274 P.2d 172]), and all presumptions favor the record

owner of the property. (*Clark* v. *Stotts* (1954) 127 Cal.App.2d 589, 592 [274 P.2d 172].) ■ Since all doubts are resolved against the adverse possessor, it appears any prejudice resulting from the loss of these witnesses' testimony will cause detriment to Valerie, not defendants.

Our disposition cannot, and does not, purport to address the underlying merits of Valerie's adverse possession claim. However, whatever its merits, the trial court erred in finding the claim barred by laches.

## II

■ The remaining contention on appeal concerns the trial court's dismissal of defendant National Research Foundation. After filing this action on July 3, 1991, Valerie did not serve the foundation until April 29, 1993. In dismissing this defendant, the trial court stated: ". . . I'm going to allow the case to go forward at this time with the sanction that National Research Foundation will be dismissed as a party due to the untimeliness of service . . . ."

■ "The management of the trial court's delay reduction program is an area within the court's discretion and will not be disturbed unless it appears that the exercise of that discretion was a clear abuse or a miscarriage of justice. [Citations.] ■ Guiding the disposition of this issue are two competing policies: (1) the reduction of delay in litigation and the expeditious and timely resolution of cases, and (2) the resolution of cases on their merits rather than dismissal on procedural grounds. [Citations.]" (*Youngworth* v. *Stark* (1991) 232 Cal.App.3d 395, 401 [283 Cal.Rptr. 668].)

Code of Civil Procedure section 583.420 provides, in pertinent part: "(a) The court may not dismiss an action pursuant to this article for delay in prosecution except after one of the following conditions has occurred: [¶] (1) Service is not made within two years after the action is commenced against the defendant." Thus, ordinarily a delay of less than two years in service of summons—as was the case here—is not grounds for dismissal.

Sacramento Superior Court Local Rule 1602.5(a) requires a plaintiff to serve the complaint upon all named defendants within 60 days of filing. Generally, an attorney's violation of local rules may result in a penalty only against counsel, and "shall not adversely affect the party's cause of action or defense thereto." (Code Civ. Proc., § 575.2, subd. (b).) However, for violations of "fast track" rules, Government Code section 68609, subdivision (d), provides: "In order to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the

program shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to achieve the purposes of this article."

In attempting to reconcile the provisions of Code of Civil Procedure section 575.2, subdivision (b), and Government Code section 68609, subdivision (d), the Courts of Appeal have reached different conclusions. (Compare *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 503 [256 Cal.Rptr. 296] [provisions should be read together and "[t]he drastic measure of dismissal should only be used where there is a clear showing that the client is the cause of counsel's failure to comply with local fast track rules, e.g., where the client will not cooperate with or supply necessary material to his or her attorney or where no other reasonable sanction will produce compliance with the rules and orders of the court"] with *Intel Corp.* v. *USAIR, Inc.* (1991) 228 Cal.App.3d 1559, 1565 [279 Cal.Rptr. 569] [concluding Government Code provision is more "narrowly circumscribed and specific than the Code of Civil Procedure provision, and is therefore controlling"].)

However, we need not reconcile these authorities, because even if the more permissive Government Code provision is controlling, the trial court has the power ". . . to dismiss actions or strike pleadings, *if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. . . ."* (Italics added.) The record contains no indication of any prior sanctions and the trial court did not mention any previous lack of compliance. Accordingly, the record does not support imposition of the severe sanction of dismissal, and the trial court abused its discretion in doing so.

## DISPOSITION

We reverse the trial court's dismissal of Valerie's first cause of action for adverse possession, reverse the dismissal of National Research Foundation, and remand for further proceedings. Valerie is awarded her costs on appeal.

Davis, Acting P. J., and Raye, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 13, 1994.